57 CCPA

**Application of Carl W. WEIL and William J. Klapproth.**

**Patent Appeal No. 8310.**

United States Court of Customs and Patent Appeals.

April 16, 1970.

John E. Hanrahan, Stamford, Conn., William P. Spielman, Washington, D. C., James H. Laughlin, Jr., Stamford, Conn., attorneys of record, for appellants. Harry H. Kline, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, which affirmed the rejection of claims 1 and 2 in appellants' application serial No. 288,548, filed June 17, 1963, for "Phthalic Anhydride Catalyst." No claim has been allowed. We affirm the board's decision.

The invention is a catalyst for use in the process of converting naphthalene to phthalic anhydride. Claim 1 is illustrative:

1. A catalyst for the vapor phase fluid bed catalytic oxidation of naphthalene to phthalic anhydride comprising about 3 to about 10% of vanadium oxide and about 15 to 35% of a potassium sulfate supported on about 55 to 75% of a silica gel carrier, said catalyst in its freshly prepared state having a pore volume of from .5 to about .7 cc. per gram and a surface area of from about 150 to 350 square meters per gram.

The forming of such catalysts from vanadium oxide, potassium sulfate and a silica carrier is admittedly old, but appellants contend that the recited pore volume and surface area are new and render the subject matter as a whole unobvious.

The specification discusses prior art phthalic anhydride catalysts, notably those disclosed in a patent to Chomitz.[1] According to appellants' specification, commercial catalysts prepared employing the Chomitz disclosure have a high salt content and low pore volume, causing the salt to ooze out of the pores when the catalyst is used for one or two months in a phthalic anhydride converter. The oozing causes formation of crystallites on the outer surfaces of the catalyst particles. The crystallites are attrited off as the catalyst circulates, causing the fines to become sticky and to adhere to internal surfaces of the converter. Such catalysts are also said to have poor heat transfer characteristics.

The examiner rejected the claims in issue here under 35 U.S.C. § 102, as anticipated by Chomitz. The examiner's reasoning was, essentially, that the steps disclosed by appellants for production of their catalysts were the same steps disclosed by Chomitz as an alternate method of making his catalysts; and that the products must be the same, even though Chomitz expressly says the surface areas of his catalysts are only 40–75 square meters per gram and the pore volumes do not exceed 0.35 cc. per gram for a catalyst having a surface of 75 square meters per gram. No other grounds of rejection were asserted by the examiner against the claims before us.

Appellants argued both novelty and unobviousness before the board. The board, however, affirmed the section 102 rejection, agreeing with the examiner's reasoning with respect to it, and also found the claimed subject matter obvious under 35 U.S.C. § 103, although it failed to denominate this a new ground of rejection under Rule 196(b). Appellants did not request that the board

1. U.S. Patent 2,973,371, issued February 28, 1961.

denominate the new rejection as such, but appealed here directly.

We agree with the board that the subject matter of both claims is obvious under 35 U.S.C. § 103. Our decision renders it unnecessary to consider the rejection under 35 U.S.C. § 102.

The Chomitz patent makes it clear that large catalyst surface area and pore volume are desirable. The patentee states that he is able to provide "an average pore diameter of *at least* 50 Angstrom units * * *" and "a surface area of *at least* 20 square meters per gram and a correspondingly high activity." (Emphasis ours.) According to appellants' brief before the board, appellants, upon noticing the oozing problem with Chomitz-type catalysts, reduced the content of catalytic salt mixture in their catalyst, thereby avoiding the ooze problem, while compensating for any resulting loss in activity by increasing the surface area and pore volume of the catalyst. Appellants have not contended that the ooze problem and its cause were not readily apparent to persons of ordinary skill in the art. We think their solution of the problem by using less salt in larger pores would have been equally apparent, provided a method of making such a catalyst was available at the time of their invention. The record leads us to conclude that such a method was available. Appellants admit, in their specification, that an appropriate silica gel carrier of large pore volume could be made "in accordance with procedures generally known to those skilled in the art." The silica gel carrier is then impregnated with salt solution, with the amount of salt being selected "so that the silica to salt ratio is from 50:50 to 75:25 and preferably 60:40 to 70:30." The impregnated catalyst is then dried, and activated by heating. Chomitz discloses a similar procedure, but suggests impregnation "by repeatedly soaking the silica gel in an aqueous solution containing potassium or ammonium metavanadate and the potassium sulfate followed by drying." We think it would have been apparent to one skilled in the art how to use less salt and thereby not fill up the pores as Chomitz did.

Appellants contend that their product is unobvious because the higher pore volume and surface area lead to "novel, *unexpected and highly valuable properties*." For the reasons stated above, we reject the contention that the results would have been unexpected even though possibly new and valuable. As we have pointed out, the recognition of the alleged ooze problem, the structure for solving that problem, and the method of making that structure would all have been apparent to persons of ordinary skill in the art at the time appellants made their invention.

What we have said with regard to claim 1 applies equally to claim 2. Claim 2 recites the size and proportion ranges somewhat more narrowly and adds a limitation that the catalyst have an $SO_3:K_2O$ mol ratio of from 1.5 to 2.3. The ratio disclosed by Chomitz is 2.0, and the narrower size and proportion limitations do not appear from the record to be of any particular significance.

The decision of the board is affirmed.

Affirmed.